UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:11-CV-00116

GAYLON HAYDEN                                                                    Plaintiff

v.

MARTIN MARIETTA MATERIALS, INC.                                  Defendant
FLEXIBLE BENEFITS PROGRAM


**MEMORANDUM OPINION**

This matter is before the Court upon the Plaintiff's Brief After Remand. (Docket No. 49.) Defendant has responded, (Docket No. 50), Plaintiff has replied, (Docket No. 51), and Defendant, with leave of Court, has filed a Sur-Reply, (Docket No. 55). This matter is now ripe for adjudication. For the reasons that follow, the Defendant's decision relative to Plaintiff's mental health long-term disability claim will be affirmed, and the Plaintiff's claim will be dismissed.

BACKGROUND

Plaintiff Gaylon Hayden brought this action against Defendant Martin Marietta Materials Inc. Flexible Benefits Program (the "Plan") under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Hayden, by virtue of her employment at Martin Marietta, was covered under a group long-term disability (LTD) plan insured and administered by Liberty Life Assurance Company of Boston (the "Plan Administrator"). Hayden claimed disability under the Plan's provisions for both physical and mental disabilities. In its Memorandum Opinion of July 31, 2012, the Court concluded that the decision to deny Hayden's claim with respect to her physical

health was not arbitrary and capricious; however, the Court reached a different conclusion relative to her mental-health claim and remanded this case to the Plan Administrator for a full and fair review. (Docket No. 25.) The Court identified two principal "missteps" in the Plan Administrator's consideration of Hayden's mental condition. First, the Court noted that Dr. Enrique Olivares, a psychiatrist who performed a mental-health review of Hayden's claim, "did not review a substantial portion of Hayden's mental health records." (Docket No. 25, at 23.) The Court reasoned that "[t]he omission of the documents resulted in inaccurate conclusions regarding when Hayden was first diagnosed with major depression and the extent of her past treatment." (Docket No. 25, at 23.) Second, the Court was left with "the unmistakable impression" that Dr. Olivares did not closely scrutinize the findings of Thomas Muehleman, Ph.D., another mental-health professional who had evaluated Hayden in relation to her claim for Social Security benefits. (Docket No. 25, at 23.) Accordingly, the Court directed the Plan Administrator "to review Hayden's psychiatric records created before her final day of work on January 5, 2010, along with those that directly bear upon mental health during the Elimination Period." (Docket No. 25, at 23.)

On remand, the Plan Administrator asked Dr. Olivares to complete an additional review. This time, Dr. Olivares was provided with a complete record of the medical and psychiatric treatment that Hayden had received prior to her final day of work on January 5, 2010. First, Dr. Olivares was asked to review Hayden's pre-2010 psychiatric records and to comment on whether those records would affect his prior findings and

conclusions as expressed in his original report dated April 8, 2011. Dr. Olivares responded:

> The claimant has a history of depression and anxiety and records reviewed would not change my previous assessment of this case as noted on 04/08/11. There is no evidence of cognitive impairment, suicidal or homicidal ideation, hopelessness, helplessness, thought disorganization, delusional beliefs, psychotic conditions or any other severe psychiatric symptoms described in the record prior to 01/05/10 that would have necessitated the claimant to be placed off work.

Admin. R. at 782-83. Dr. Olivares was then asked to "thoroughly re-review all medical records provided and provide a description of the claimant's impairments, if any, for the period beginning 1/5/10 through 7/4/10 [*i.e.* the Elimination Period]." Admin. R. at 783. Dr. Olivares responded: "Records were reviewed again and there is no evidence of psychiatric impairment beginning 01/05/10 through 07/04/10." Admin. R. at 783. Finally, Dr. Olivares was asked to "review and comment on Dr. Thomas Muehleman's findings as set forth in his report prepared for the SSA Dept. for Disability Determination dated March 25, 2010," to which Dr. Olivares responded:

> There is a disability examination by Dr. Thomas Muehleman, Ph.D., on 03/25/10. This examination is interesting in which Dr. Muehleman indicates that the claimant drove unaccompanied 45 minutes to the examination site. Her appearance was good, her hair was neat, she was casually dressed in nice, well-dressed clothing. Posture and gait were unremarkable. She was tearful during the interview, however she was alert, thought processes were logical and she was oriented times three. She was able to give him six digits forward and five digits backwards. She was able to remember three objects immediately, only one after five minutes, but short-term memory was rated as good. Fund of knowledge was limited and some limitations were found in abstract abilities. Dr. Muehleman indicates the claimant sees a counselor and takes Xanax for anxiety. There is no history of

substance abuse. She has had good job performance in the past. She had taken Effexor with increasing blood pressure, Xanax and BuSpar. She would not take until the present because her cancer doctor has told her that he did not want her to take any of these medications. She was worried about having the cancer spread to her body. She complained of decreased sleep, decreased weight, low energy and anhedonia. She was diagnosed with 300.00 anxiety disorder NOS, 296.22 major depressive disorder, single episode, moderate. On Axis II deferred. On Axis III, hepatitis C, pancreatitis, left breast cancer, spot on the liver, degenerative arthritis, scoliosis for life, left vocal cord. On Axis IV, occupational problems, unemployment, health problems and on Axis V GAF is 50. Dr. Muehleman finds that the claimant has significant impairment in different areas of her mental condition. However, the finding of these disabilities are in no relationship to description of mental status examination and the claimant's functional abilities as demonstrated by her being able to independently travel long-distance to go for this interview. I believe there is discrepancy between the findings of the medical history, examination and the final conclusions that lend low credibility to this report.

Admin R. 783-84.

The Plan Administrator, in a letter dated January 25, 2013, affirmed its prior decision and informed Hayden of its determination that she was not eligible to receive benefits. Admin R. at 755. That letter began with a recitation of the relevant Plan provisions:

> **Disability Benefit**
> When [the Plan Administrator] receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, [the Plan Administrator] will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to [the Plan Administrator] Proof of continued:
>    1. Disability

2. Regular Attendance of a Physician; and
    3. Appropriate Available Treatment.

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:
    1. a claim form completed and signed . . . by the Covered Person claiming benefits;
    2. an attending Physician's statement completed and signed . . . by the Covered Person's attending Physician; and
    3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence in support of a claim for benefits.

**"Disability"** or **"Disabled"** means:
    . . . that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his own Occupation.

. . . .

**"Elimination Period"** means a period of consecutive days of Disability of Partial Disability for which no benefit is payable. . . .

**Elimination Period:**
The greater of:
    a. the end of the Covered Person's Short Term Disability Benefits; or
    b. 180 days.

Admin. R. 755-56 (italicization omitted). That letter continued:

The records reflect that Ms. Hayden has a long-standing history of anxiety and depression, and that she has been able to continue working while experiencing symptoms and receiving treatment.

My. Hayden's earliest consultation with a mental health care provider for which documentation is available took place on

December 7, 2006, when she was evaluated by Dr. Ronald Kelly.[1] Ms. Hayden's most recent visit with Dr. Kelly for which documentation is available took place on February 21, 2007.

There are no mental health records from February 21, 2007, until a report and form completed by Dr. Lyons on February 15, 2010. However, it is important to note that the report and form address Ms. Hayden's prior mental health treatment and reflect that she had not seen Dr. Lyons since July 30, 2008.

On March 25, 2010, almost three months after her claimed date of disability, Ms. Hayden attended a consultative examination with Dr. Muehleman at the request of the Department for Disability Determination.

. . . .

With the exception of Dr. Muehleman's March 25, 2010 evaluation, the records contain no documentation that Ms. Hayden consulted a mental health care provider between her July 30, 2008 visit with Dr. Lyons and her September 23, 2010 evaluation with Dr. Meyer.

Admin. R. at 757-58. The Plan Administrator's letter then concluded:

[W]hile Ms. Hayden may have experienced some symptoms associated with her long-standing mental health condition leading up to and following her claimed date of disability, we have determined that the available information does not contain mental status exam findings, diagnostic test results or other forms of medical evidence substantiating that those symptoms were of such severity, frequency and duration that they resulted in restrictions or limitations rendering her continually unable to perform her duties of her occupation throughout and beyond the Policy's Elimination Period.

---

[1] Although various spellings appear in the record, it appears that Dr. Ronald Kelley's name is correctly spelled "Kelley," not "Kelly."

> . . . [O]ur position remains that proof of her disability and eligibility to receive benefits under the terms of the Policy due to mental illness has not been established.

Admin. R. at 760.

Thus, the Plan Administrator again concluded that Hayden was not disabled by a mental condition at the times relevant under the Plan and again denied LTD benefits. Hayden, dissatisfied that the Plan's review, again brings this matter before the Court.

STANDARD

The standard of review after remand is the same as that previously employed by the Court in its July 31, 2012, Memorandum Opinion. While courts generally "review a plan administrator's denial of ERISA benefits de novo," when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Emps.' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary-and-capricious standard is deferential, it is not "without some teeth." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)

(citation and internal quotation marks omitted).  A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id*.  Without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits." *Id*.

As the Court noted in its prior Memorandum Opinion, there may be an inherent conflict of interest where a plan administrator both determines and pays for benefits.  (Docket No. 25, at 11-12.)  The Court found no evidence of an inherent conflict of interest and, therefore, gave only slight weight to this consideration.  The Court finds no reason to do otherwise here.

The Court also noted that a file review of a benefits decision is not inherently objectionable if performed by a qualified medical professional.  (Docket No. 25, at 19 (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)).)  The Court recognized, however, that where the administrator foregoes a physical examination, questions can exist about the accuracy of the benefits decision.  (Docket No. 25, at 19 (citing *Bell v. Ameritech Sickness & Acc. Disability Ben. Plan*, 399 F. App'x 991, 1000 (6th Cir. 2010); *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009)).)  Accordingly, benefits determinations may be arbitrary and capricious when they make credibility determinations without the aid of a physical exam.  (Docket No. 25, at 19 (citing *Bell*, 399 F. App'x at 1000).)

DISCUSSION

In her instant Brief After Remand, Hayden in effect raises two arguments why the Plan Administrator did not provide the full and fair review owed to her. First, and primarily, Hayden takes issue with Dr. Olivares' consideration of Dr. Muehleman's evaluation. She characterizes Dr. Olivares' review as "glossing over the restrictions assigned by Dr. Muehleman" and dismissing Dr. Muehleman's examination "out of hand." (Docket No. 49, at 7.) In this regard, Hayden puts particular weight on Dr. Olivares' comments about her 45-minute drive to the consultation with Dr. Muehleman, insisting that "Dr. Olivares' opinion is not evidence of a deliberate, principled reasoning process." (Docket No. 49, at 7.) Second, Hayden seems to argue that the Plan administrator ignored other evidence, such as the treatment records of Drs. Bassi, Kelley, Meyer, and Lyons. (*See* Docket No. 49, at 8-9.) The Court is unpersuaded that either argument warrants the relief Hayden seeks.

First, Hayden's primary argument puts undue weight on Dr. Olivares' comments about her 45-minute drive to her appointment with Dr. Muehleman. Read in its entirety, Dr. Olivares' report and responses to the questions posed by the Plan Administrator make clear his opinions and the reasons for his disagreement with Dr. Muehleman. Dr. Olivares explained that, upon reviewing Hayden's entire medical history and mental health treatment, he found Dr. Muehleman's ultimate conclusions inconsistent with Dr. Muehleman's own observations, as well as with Hayden's records. Dr. Olivares pointed to the fact that Hayden drove 45-minutes, independently, to meet with Dr. Muehleman as merely one example of a discrepancy between Hayden's medical history and the conclusions reached by Dr. Muehleman.

Left with "the unmistakable impression" that Dr. Olivares had not closely scrutinized the findings of Dr. Muehleman, the Court, in its prior Memorandum Opinion, specifically directed the Plan Administrator "to review Hayden's psychiatric records created before her final day of work on January 5, 2010, along with those that directly bear upon mental health during the Elimination Period." (Docket No. 25, at 23.) It appears the Plan Administrator has done just that. Accordingly, the Court finds no reason to disturb the Plan Administrator's determination based on this argument.

In regard to Hayden's second argument, the Court is similarly unpersuaded that the Plan Administrator improperly ignored other evidence of Hayden's mental condition. As previously noted, "[t]he Plan unambiguously demarcates the date from which an employee's disability is measured." (Docket No. 25, at 17 (citing Admin. R. at 4, 7, 16.).) An administrator does not act arbitrarily and capriciously when it abides by the policy's restrictions, and courts routinely heed administrators' denials when claimants fail to establish that they are entitled to benefits during the elimination period. (*See* Docket No. 25, at 17 (referencing *Butts v. Cont'l Cas. Co.*, 357 F.3d 835, 839 (8th Cir. 2004); *Kennedy v. Aetna Life Ins. Co.*, 2012 WL 1858960, at *19 (E.D. Mo. May 22, 2012)).) Under the Plan's terms, the Elimination Period would extend from her last day of work, January 5, 2010, through July 4, 2010. (*See* Docket No. 25, at 17 (referencing Admin. R. at 64).) The evidence of Hayden's medical condition and treatment she points to was properly discounted by the Plan Administrator as falling outside the Elimination Period. As such, the Court finds no reason to disturb the Plan Administrator's determination based on this argument.

In conclusion, the Court remanded this case with the instruction that the Plan Administrator "review Hayden's psychiatric records created before her final day of work on January 5, 2010, along with those that directly bear upon mental health during the Elimination Period." (Docket No. 25, at 23.) Upon reviewing the Administrative Record after remand, the Court is satisfied that the Plan Administrator conducted a full and fair review, and that its decision was the result of a deliberate, principled reasoning process and was supported by substantial evidence. Accordingly, the Plan Administrator did not act in an arbitrary and capricious manner in reaching its benefits decision.

## CONCLUSION

Therefore, having considered the Administrative Record and the parties' respective arguments after remand, the Court will affirm the Defendant's decision relative to Plaintiff's mental health long-term disability claim, and this action will be dismissed. An appropriate Order will issue separately with this Opinion.

Date:


cc: Counsel